## THE NORTHERN CENTRAL RAILWAY CO. *vs.* JOSHUA W. HERING, COMPTROLLER ET. AL.

*Annuites—When Not Liable to Extinguishment—Construction of the Act of 1854, ch. 260, and a Mortgage Creating an Annuity Payable by the N. C. Ry. Co. to the State of Maryland.*

When the purpose of a mortgage is to secure the payment of an annuity, and there exists under it no right on the part of the mortgagee to demand payment at any time of a principal sum or obligation on the part of the mortgagor to pay the same, the mortgage conferring a power to foreclose only in the event of default in payment of the annual sums, then the mortgagor is not entitled to redeem or extinguish the annuity by the payment of a principal sum.

In 1834, the Baltimore and Susquehanna R. Co. being then indebted in a large sum to the State of Maryland, executed a mortgage to the State, in the usual form, in pursuance of an Act of the Legislature, to secure the payment of such indebtedness. The State was also a large shareholder in the company. The Act of 1854, ch. 250, authorized that company to unite with certain other railways in order to form the Northern Central Ry. Co., but provided that the existing liability of the Baltimore and Susquehanna R. Co. should continue to be binding upon the property. At that time the debt due to the State by this company exceeded the value of all its property, and to facilitate the union of the companies the Legislature by an Act (1854, ch. 260), passed on the same day as the Act authorizing the consolidation, released its claim against, and surrendered its stock in the Baltimore and Susquehanna R. Co., and agreed to accept a mortgage of the Northern Central Ry. Co. from Baltimore to Sunbury to secure to the State the payment of the annual sum of $90,000. This Act was entitled "An Act to provide for the sale of the interest of the State of Maryland in the" Baltimore and Susquehanna R. Co., etc. It provided also that "the said annuity shall be subject to be extinguished at any time within ten years hereafter, upon the full payment of $1,500,000 with all interest that may be due by the said company, who shall have the privilege of paying off the same in instalments of not less than $100,000 each." No obligation to pay any principal sum was imposed. The Act directed that the mortgage required to be given to secure the said annuity should authorize a sale of the mortgaged property after a default to pay the whole amount of the annuity which may fall due in any one year. In 1900 the Northern Central Ry. Co. tendered to the Comptroller and Treasurer of the State the sum of $1,500,000, claiming that it was entitled to redeem and extinguish said annuity by the payment of that sum, and filed the bill in this case asking for a decree that the tender was in equity an extinguish-

ment of the obligation, for a mandatory injunction, etc. *Held*, that it was the intention of the parties and the effect of the Act of 1854, ch. 260, and the mortgage executed in pursuance thereof, to create an irredeemable annuity, with the privilege of extinguishment strictly limited to the period of ten years from its date; that no principal sum is now or has been due by the company to the State, and that consequently the company is not entitled to the relief asked for.

Appeal from a decree of the Circuit Court of Baltimore City (WICKES, J.), dismissing the bill of complaint. The bill prayed. 1. For a construction of the Act of 1854, chapter 260, and the instruments executed thereunder. 2. For a declaration that the tender was in equity an extinguishment of the obligation. 3. For a mandatory injunction requiring the Comptroller and Treasurer to receive the sum so tendered. 4. For an injunction to prevent any attempted sale under the Act of 1898. 5. For an injunction forbidding the defendants from making any attempt to collect any alleged instalments of the ninety thousand dollars ($90,000) *per annum* after the date of the tender, and 6, for general relief.

To this bill the defendants demurrred, upon the following grounds : 1. That the suit is in effect a suit against the State, and the State is not liable to suit. 2. That after the lapse of ten years from the passage of the Act of 1854, chapter 260, the obligation of the company became irredeemable. 3. That the relief sought is barred by laches and limitations.

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*John J. Donaldson* (with whom was *Bernard Carter* on the brief), for the appellant.

The Act of 1854 provides that in the "mortgage" the company should covenant to pay the annuity in quarterly instalments; and that the annuity shall be subject to extinguishment "at any time within ten years hereafter, upon the full payment of one million five hundred thousand dollars ($1,500,000), with all *interest* that may be due by the said company, *who shall have the privilege of paying off* the same in instalments *of*

*not less than one hundred thousand dollars each*, and of obtaining a ratable reduction of the annuity computing the same at *six per cent* on each payment so made." Section 3 provides that the "mortgage" "*shall contain the usual conditions* in such deeds," with a clause for the "*sale* of the *mortgaged* property" upon default in payment of the annuity, and goes on to recite "it being the intent of this Act in releasing to the Consolidated Company the mortgage or mortgages heretofore given to the State by the Baltimore and Susquehanna Railroad Company, and taking another *mortgage* from the said Consolidated Company, as is herein above provided, to retain in the new *mortgage* the same priority of lien which the State now holds on the part of the road heretofore mortgaged as aforesaid, and also to obtain the additional *security* of the *mortgage* by the Consolidated Company in all the remaining portion of the road between Baltimore and Sunbury."

Apart, however, from the express provision of the Consolidation Act (1854, ch. 250, sec. 1), as a mere result of the consolidation the N. C. R. Co. became responsible for all the liabilities of its constituent companies, that then ceased to exist. *Mt. Pleasant* v. *Beckwith,* 100 U. S. 514; *State, use of Dodson* v. *B. & L. R. R. Co.,* 77 Md. 489. Technically, the Northern Central Railway Company was a new person, but in a Court of Chancery the essence of the transaction must govern. By every principle of statutory construction, the two Acts of 1854 must be read together, and when this is done, the essence of the transaction (to which alone a Court of Chancery will look) becomes plain enough. It is with *its debtor* and the debt that the State is dealing throughout. In substance, its debtor and its debtor's property are not released, though new debtors (the Pennsylvania corporations) and their property are brought in *to add to the security of the debt* (1854, ch. 260, sec. 3). Reducing the case to terms of partnership (for such it is in essence), it presents no difficulty on this point.

At the time of the consolidation, the Baltimore and Susquehanna Railroad Company was indebted to the State for loans in the sum of $1,884,046.29, principal, and $1,035,980.76 re-

funded arrears of interest ; in all $2,920,026.05, which was
secured by *mortgages in the usual form.*

The adjustment actually made with the State, as appears
from the terms of the Act of 1854, ch. 260, and the instru-
ments executed thereunder, and the acts of the parties in pur-
suance thereof was, in legal effect, a reduction of the debt to
the State to the sum of $1,500,000, and an agreement to
transfer to the new company all its interest as stockholder in
the old company in consideration of the securing by the new
company to the State the payment of said $1,500,000 in the
manner set forth in the said Act of Assembly ; the new com-
pany being formed by the companies which were to unite, and
thereafter did unite on the faith of this adjustment, which was
contemporaneous with the authority for their union and con-
ditioned upon it.

As to the limitations of this annuity (in itself a mere *per-
sonal* charge on the company), there is nothing said in the Act
or in the mortgage as to its duration or its redemption, ex-
cept as to the last in sec. 2 of the Act of 1854, ch. 260,
(also recited in the mortgage), which provides for the extin-
guishment within ten years on payment of a capitalization at
six per cent (6%), with all *interest* that may be due by the
said company," and for the paying off the same in instal-
ments of $100,000.   As this last reservation is without time
limitation, a perfectly possible reading of the statute is that
the State for the first ten years did not wish to be forced to a
piecemeal redemption.   It is to be noticed that there is no
conjunction binding the provisions with regard to payment in
instalments to those covering the ten-year redemption at the
total capitalization.

The enquiry is whether the transaction was the creation of
an annuity subject to a limited right of redemption (or re-pur-
chase,) or a mortgage to which the right of redemption with-
out time limit is in law a necessary incident.   As was held by
LORD HARDWICKE in *Longuet v. Scawen,* 1 Ves. Sr. 402,
where in such a case the construction is doubtful, the Court
will endeavor to hold the transaction a mortgage, and thus

save the right of redemption. *Howard* v. *Harris*, I Vern. 190; *Stanhope* v. *Cope*, 2 Atk. 231; *Salt* v. *Marquess of Northampton*, 45 Ch. D. 190; s. c. 1892, A. C. 1; *Conway* v. *Alexander*, 7 Cranch, 218; *Dougherty* v. *McColgan*, 6 G. & J. 275; *Baugher* v. *Merryman*, 32 Md. 185; *Dungan* v. *Ins. Co.*, 46 Md. 469. So we find Courts of Chancery eager to seize upon some circumstance in the transaction as a gound for holding it in effect a mortgage, in *Verner* v. *Winstanley* 2 Sch. & L. 393; *Lawley* v. *Hooper*, 3 Atk. 278; *Caverly* v. *Dudley*, 3 Atk. 541. In many of the cases the test of the mortgage *vel non* is said to be the existence of a *debt* in consideration of which the grant is made. It is on this ground the Maryland Court of Appeals has frequently allowed the redemption of ground rents after the time limit had expired, as in *Montague* v. *Sewell*, 57 Md. 407; *Posner* v. *Bayless*, 59 Md. 60. If this principle be sound, that a debt implies a mortgage, the converse may well be true, that a mortgage implies a debt, and it has so been held. *King* v. *King & Ennis*, 3 P. Wms. 358. Nor does the absence of a convenant to repay affect the question. *Lawley* v. *Hooper*, 3 Atk. 280; *King* v. *King & Ennis*, 3 P. Wms. 360.

There is a fuller test of whether a given transaction is to be held a mortgage and so redeemable given by the Court in *Goodman* v. *Grierson*, 2 Ball & B. 275, viz., whether the grantee has all the remedies of a mortgagee. Applying this test to the present case, what such remedy does the State lack? It has (1) a right to possession, (2) a right to the annual profits, (3) to a protection of these by injunction and receiver, (4) a right of action against company on the covenant for the quarterly payments, (5) a right of action for the "debt," the "large amount loaned," (6) a right to foreclosure.

It would seem, however, that so broad a test is not called for. In Chancery it may, we confidently submit, be taken as axiomatic that *foreclosure and redemption are absolutely correlative.* As long as the former right lasts, so long does the latter exist. For whatever amount the grantee can foreclose, for that amount the grantor can redeem. *DuVigier* v. *Lee*, 2 Hare, 326. As to the existence of the right of foreclosure

and *within time limit* in the present case there is no doubt. There must then exist the right of redemption in like manner without time limit.

After the ten years were past, for what could the State fore-closure? Merely for the arrears of the annuity? This construction is absolutely negatived by the character of the conveyance called for by the Act and executed by the company. It was to carry, and did, the whole property of the company, its tolls and revenues, with the equipment (18 Md.) *"to secure the payment of the annuity."* It was to give the State, and did, a power of sale *of all the interest of both parties* on default in payment. It is needless to say that such a power must be exercised in strict accordance with its terms. A sale under it would be of the whole estate, and the purchaser would take the same discharged of all claims of grantor and grantee. If it were only the *arrears* that the State could claim out of the proceeds, all security "for the payment of the annuity" would be gone, and as to subsequent instalments the State would be but an unsecured creditor of a corporation which would be without means to pay, as all its property had been taken from it and its earning capacity gone forever. So we should find a property representing an investment of millions sold perhaps for a claim of but $22,500, and thus a security for that amount alone, and for that only a priority. That the Legislature ever meant to require, or the company to give, a self-destructive security would seem an inadmissible construction.

Coming to the Act itself, we find a capitalization fixed by its terms, viz., $1,500,000, this *and no other*. It must be remembered that at the time the Act was passed the legal rate of interest was 6 per cent any higher rate being constitutionally prohibited (Const. of 1850, art. 3, section 49), and this is still the legal rate, and the annuity is in section 2 of the Act spoken of as "interest." Such, too, was the ratio adopted by the Sate for the redemption of ground rents under the Acts of 1884, ch. 485, and 1888, ch. 395. (Code P. G. L., 1888, Art. 53, section 24.)

That it was to this capitalization the State was entitled on

a sale was evidently held by the State's counsel, Mr. Alexander, one of the most eminent lawyers of his day, as it is *that* which he demands in the information.   To this it may be answered on the part of the State that the information was filed during the ten-year redemption period, and on foreclosure during this, the State could only receive such an amount as it would be entitled to on redemption, and that after that period the annuitant would be entitled out of the proceeds of sale to such a sum as would, invested at current market rates, produce the annuity, as has been held in Maryland in the case of annuities under wills.   *Buchanan* v. *Deshon*, 1 H. & G. 280, 293 ; *Perkins* v. *Emory*, 55 Md. 38.   But these were cases of *life* annuities and not of annuities claimed, as here, to be perpetual.

As to these authorities and the English decisions which they follow, it is submitted that they have no application to the present question, being founded on the well-established principle that a gift by will of an annuity is a gift of the fund to produce it.   And it is only in such a case that, *independent of statute*, an annuity is so capitalized.   Where it is necessary in administration to value annuities for the purposes of abatement with other legacies, the rule is to take the value *at the date of their creation*, viz., at the testator's death.   *Leake, Uses and Profits of Land*, 396 ; *Wroughton* v. *Colquhoun*, 1 DeG. & S. 387 ; *Carr* v. *Ingleby*, *Ibid*, 362 ; *Long* v. *Hughes*, *Ibid*, 364 ; *Franks* v. *Cooper*, 4 Ves. 763 ; *Todd* v. *Bielby*, 27 Beav. 353 ; *Roper* v. *Roper*, L. R., 3 Ch. D. 714–20.   Such is the rule also, wherever the estate on which an annuity is charged is being administered in chancery.

Certainly upon a foreclosure by the State, either under the power, or under bill filed (when by the very terms of the Act and the mortgage to the State, the *whole* estate must be sold) or on a like foreclosure by a later encumbrancer, the estate would be administered in chancery, and the rule last referred to would fully apply.   In England a like method of valuation of annuities was followed in bankruptcy (viz., *as of the time of their creation*) until a different rule was introduced by statute.

So where an annuity granted by a decedent to a child is to be brought into hotchpot as an advancement, it is to be valued as of the time of the grant. *Kirkcudbright* v. *Kirkcudbright*, 4 Ves. 763. (Argument as to whether the suit is against the State or is barred by laches, is omitted).

*Isidor Rayner, Attorney-General*, for the appellee.

This Court has been called upon to pass upon transactions precisely similar to this, with one feature eliminated, and that is that none of the cases presented the elements of strength that this case does in favor of the proposition asserted by the State, because here we have an *Act of Assembly as explicit as language can make it, settling the law that governs the case, and the rights of the parties.* In these Maryland cases this Court has differentiated *an annuity, perpetual in its character, from a redeemable debt. Hinkley* v. *Wheelwright*, 29 Md. 348; *Packard* v. *Corporation for Relief of Widows, &c.*, 77 Md. 240; *Hopper* v. *Smyser*, 90 Md. 363; *Wetter* v. *Hardesty*, 16 Md. 15; *American Bank* v. *Harlan*, 89 Md. 678; *Hicks* v. *Hicks*, 5 Gill & Johnson, 75; *Watkins* v. *Stockett*, 6 H. & J. 435; *McElderry* v. *Shipley*, 2 Md. 63.

The law in this case has been settled by the Act of Assembly of 1854, chapter 260. This special Act passed with reference to this special case and accepted by the complainant, creates the annuity, and in unmistakable language, stamps it as an annuity. This Court is absolutely without power to change the law of this case as declared by the General Assembly, and cannot grant the relief prayed for unless it obliterates the statute.

The proposition of the State is that it conclusively appears upon the face of the Act and all of the exhibits which have been filed with the bill, for the purpose of throwing light upon the Act, that this was a transaction between the State and the complainant, providing for the creation of an annuity in perpetuity to the State by the complainant with the right of redemption limited to ten years in consideration of the sale by the State to the complainant of its interest in the Baltimore and Susquehanna Railroad Company.

Decisions in the early English cases and under the Acts of George IV, providing for the registration of annuities ; the *creation of annuities by American railroad corporations, where there is no principal sum payable, and the annual payments run in perpetuity, and the constant creation of annuities in Maryland* by individuals and bodies corporate, have so distinctly characterized this form of investment, that it would be supreme folly to assert that when a railroad corporation, represented by learned counsel enters into a contract with the State for the creation of an annuity, that it did not know what it was doing, that the legislation that it procured and the instruments that it executed meant something entirely different from what they really are, and that a Court of equity nearly half a century after the transaction takes place, must take the railroad under its protection and make a new contract for it, adapted to the exigencies of the occasion.

In *Lumley on Annuities* 3, it is stated that we must distinguish an *annuity from an interest-bearing debt.  In the latter case the principal is not by the force of the contract lost, but is preserved and is to be repaid, while in the case of an annuity there is no principal, or it is only to be returned by the annual payments to be made during the existence of the annuity itself.* And in *Winter* v. *Mousely*, 2 Barnwell and Alderson, 806, BEST, J., says : " I have, however, always understood the meaning *of an annuity to be where the principal is gone forever and it is satisfied by periodical payments.*"    See *Holderness* v. *Carmarthea*, 1 Bro., Ch. C. 382 ; *Iraham* v. *Childe, Ibid*, 93.

In this State there is one case after another defining annuities and passing upon them as well-recognized forms of investment.    *Banks* v. *Haskie*, 45 Md., p. 207 ; *Cahill* v. *Maryland Life Insurance Company*, 90 Md. 333 ; *Robinson* v. *Townsend*, 3 Gill & Johnson, 413, 422, 425 ; *Moale's Executor* v. *Cutting*, 59 Md. 510, p. 524 ; *Perkins* v. *Emory*, 55 Md., p. 27 ; *Emory* v. *Emory*, 91 Md. 531.

The relation of creditor and debtor between the State and the Baltimore and Susquehanna Railroad Company no longer exists, and so far as the complainant is concerned *the relation*

*of debtor and creditor never existed between it and the State ex-*
*cept in reference to the annuity of ninety thousand dollars pro-*
*vided for by the Act of Assembly.*   The Northern Central Rail-
way Company was an entirely new party to the transaction
and has been so declared in decisions of our own Court in the
case of the *State* v. *The Northern Central Railway Company*,
in 44 Md. 163 and 164, and in 90 Md. 466.

If the relation of debtor and creditor had existed between
the roads and there had been no Act of Assembly in unmis-
takable terms creating the annuity, even under such circum-
stances the law is settled by an unbroken current of author-
ities that whenever a creditor accepts the conveyance in sat-
isfaction, and not as collateral to the debt, the conveyance is
good.

If A owes B a debt B has a perfect right to extinguish the
debt and accept an annuity in place of it.   This was precisely
what was done in both of the Maryland cases of *Wetter* against
*Hardesty*, in 16 Md., and *Hinkley* v. *Wheelwright*, in 29 Md.,
hereinbefore referred to.   Even if the Northern Central Rail-
way Company had been indebted to the State, which, as has
been shown, it never was, it had a perfect right to extinguish
this debt and grant this annuity in lieu of it, *especially under*
*an Act of Assembly which furnished the law of this case.*   This
is what was done, not for its own debt, but for the old debt
of the Baltimore and Susquehanna Railway, and it is respect-
fully submitted that there is no principle of law in any of the
text-books, and there is no decision in any case that can be
found, that under these circumstance offer the slightest pretext
for the institution of this anomalous proceeding.   *West* v.
*Hendrix*, 28 Ala. 226; *White & Tudors Leading Cases in*
*Equity*, vol. 2, part 2, p. 1996; *Goveman* v. *Grierson*, 2 Ball
& Beatty's Reports, 137–8–9; *Robinson* v. *Cropsey*, 2d Ed-
wards' Chancery, 138; 6 Paige, 480; *People ex rel. Ford* v.
*Irwin*, 18 Cal. 117; *Swetland* v. *Swetland*, 3 Mich. 482; *Baker*
v. *Thrasher*, 4 Denio. 493; *Henley* v. *Hotaling*, 41 Cal. 22, 27,
28; *Holmes* v. *Grant*, 8 Paige, 243; *McNamara* v. *Culver*, 22
Kan. 661; *Randall* v. *Sanders*, 23 Hun. 611. (Argument on
other points omitted.)

PAGE, J., delivered the opinion of the Court.

This suit was instituted by the appellant against certain officials of the State of Maryland for the purpose of obtaining a decree declaring that by the true construction of the Act of 1854, chapter 260, and of the instruments executed and delivered thereunder, the obligation of the appellant to pay to the State $90,000 *per annum*, was and is extinguishable upon the payment by the appellant into the Treasury of the State of the sum of fifteen hundred thousand dollars, with the arrears, if any, of the annual sum ; also for an injunction requiring the appellees to receive said sum, &c. The Court below dismissed the bill and the appellant has appealed.

It was contended by the appellant that the transaction under and by virtue of the Act of 1854, ch. 260, was an arrangement made on a past indebtedness, which still remains, and that in consequence thereof there belongs to the appellant the right of redemption upon payment of $1,500,000, the amount of such indebtedness.

As to whether the transaction amounts to the creation of an annuity only, or of a mortgage to secure the payment of a principal sum with the interest thereon, must depend upon the intent of the parties, as ascertained from the words of the mortgage itself, interpreted in the light of all the attending circumstances, which can be properly taken into account. *Hinkley* v. *Wheelwright*, 29 Md. 348; *Wallace* v. *Johnston*, 129 U. S. 58; *Gossip* v. *Wright*, 9 Jurist N. S. 594.

There is no legal principle that can operate to restrain the State and the Railroad Company from making a contract by which the principal of a past indebtedness should be released upon a consideration for the payment of an annual sum. Such transactions are not unusual. They involve no legal considerations, other than those which apply to the creation of irredeemable ground rents. Nor can the capacity of the parties to create an annuity upon a new consideration when there is no past indebtedness be questioned. The parties are *sui juris*, and they undoubtedly have the power to make any contract, which does not violate some established legal prin-

ciple. *Hinkley* v. *Wheelwright*, (*supra*), 348 ; *Wetter* v. *Hardesty*, 16 Md. 16 ; *Packard* v. *Corporation*, 77 Md. 240 ; *Banks* v. *Haskie*, 45 Md. 207 ; *Perkins* v. *Emory*, 55 Md. 27 ; *Irnham* v. *Childe*, 1 Brown C. C. 93 ; *Robinson* v. *Cropsey*, 2 Ed. Ch. 138.

The question in the present case, therefore, is, was it the intention of the appellant and the State to create and secure by mortgage an annuity only ?   Or was it intended that the mortgage should secure the payment of the principal sum of $1,500,000, and that the so-called annuity and the clauses referring thereto, are no more than special provisions designed to assure to the State the prompt receipt of interest ?   It is obvious that if the instruments themselves on their face show that merely the annual payment was to be secured, such a conclusion would follow, unless it was apparent from other evidence, properly to be regarded, that the real purpose of the transaction was to preserve and protect a principal sum. And if, upon all the facts legally applicable, the construction be doubtful, Courts will endeavor to hold the transaction to be such as to preserve the right of redemption. *Longuet* v. *Scawen*, 1 Ves. Sr., 406 ; *Lawley* v. *Hooper*, 3 Atk. 278.

If the transaction now under consideration be in fact an annuity, the right to recall the principal sum (assuming for the moment there ever was an indebtedness by the appellant to the State), would be gone forever.   In *Winter* v. *Mouseley*, 2 B. & A. 806, BEST, J., said : " I have always understood the meaning of an annuity to be when the principal is gone forever, and it is satisfied by periodical payments. "   It is a yearly sum chargeable only on the person of the grantor, 2 Blackstone 40.   " It is, however, a necessary ingredient in a mortgage that the mortgagee should have a remedy against the person of the debtor." *Conway's Extr.*, 7 Cranch 239.

In *Hinkley* v. *Wheelwright* (*supra*), when the form of the deed was sufficient to establish a conditional sale, the Court laid it down that the deed being in fact a mortgage, there existed in the creditor the right to call upon his debtor "to make payments at once, or submit to a foreclosure of the mortgaged

premises." In *Robinson* v. *Cropsey*, 2 Edw. Ch. R. 144,. affirmed in 5th Paige 480, the Court said that the debt having been extinguished at the time of the transaction, the convey- ance cannot be treated as a mortgage. So in *Goodman* v. *Grierson*, cited in *Williams* v. *Owen*, 5 Mylne & Craig, 303, the VICE CHANCELLOR said that " a fair criterion by which the Court is to decide whether this deed be a mortgage or not, I apprehend to be this—are the remedies reciprocal? has the defendant all the remedies a mortgagee is entitled to?" *Du- Vigier* v. *Lee*, 2 Hare 326; *Verner* v. *Winstanley*, 2 Sch. & L. 393; *Goodman* v. *Grierson*, 2 Ball & B. 275; *Montague* v. *Sewell*, 57 Md. 418; *The People* v. *Irwin*, 18 Cal. 117; *Swet- land* v. *Swetland*, 3 Mich. 483.

It would seem to follow from this statement of the legal principles that should control this case that the mortgage exe- cuted in conformity with the Act of 1854, ch. 260, would not be a security for the payment of a principal sum to the State,. if at the time of the transaction such indebtedness did not. exist, and was not thereafter created by agreement of the parties. And that if it shall appear from an examination of the terms of the mortgage and all other facts proper to be considered in that connection, that the State has not and never has had any right to demand the payment of such sum, and on failure of the appellant to pay it, to foreclose, then there can be no right of redemption on part of the appellant. In such a case it will be necessary to hold that the mortgage is. a security only for the payment of the annuity, at the times. and in the manner stated in the instrument.

The circumstances that led up to the transaction, that is the subject of this inquiry, as disclosed by the bill and exhibits,. are as follows :

The Baltimore and Susquehanna Railroad Company was in- corporated in 1827 for the purpose of building a railroad from the city of Baltimore to some point or points on the Susque- hanna river. Under the terms of the Act of incorporation, the State became a subscriber to, and holder of two thousand shares of the capital stock of said company, of the par value

of fifty dollars per share.    Under the authority of various other Acts, the State also made loans to the company, so that on the twentieth day of June, 1855, the principal of such loans amounted to the sum of $1,884,025.29, with accrued interest of $1,035,980.75.    By and in conformity with the provisions of the Act of 1834, chapter 241, the company duly executed and delivered to the State certain mortgages to secure these loans and the interest thereon, copies of which are filed with the bill and appear in the record.    They are in the usual form, and contain covenants on the part of the company to pay or cause to be paid to the State, the principal and interest of the loans, and are to become null and void upon such payments being made.    By the Act of 1854, chapter 250, passed and approved on the tenth day of March, the Baltimore and Susquehanna Railroad Company was authorized to consolidate with the York and Maryland Line R. R. Company, the York and Cumberland R. R. Company and the Susquehanna R. R. Company, by the name of the Northern Central Railway Company, on the conditions set forth in the Act; and on the third of May following an Act of the Legislature of Pennsylvania authorizing the consolidation was approved.  One of the conditions contained in the Maryland Act authorizing the consolidation was, "that existing contracts, engagements and liabilities of the said Baltimore and Susquehanna R. Company, shall continue to bind said company and its property as fully as before authorized, or that the said existing contracts, engagements and liabilities shall be duly adopted and assumed by the consolidated company except as herein expressly altered or rescinded."    It is obvious in face of this condition, that the debt to the State from the Baltimore and Susquehanna Company, and the mortgages made to secure them were in no respect impaired by this act.    The *status* of the State's claim remained unaltered, so that any rights the State had before the consolidation continued thereafter against the Baltimore and Susquehanna Company, in the same manner and to the same extent as would have existed had there been no consolidation. On the fourth day of December, following the passage of the

act of consolidation, the several railroad companies entered into "Articles of Union." These however, could not affect the rights of the State, for they were determined by the Act authorizing the consolidation. The "Articles of Union" were the conditions precedent to the incorporation of the new company, which owed its existence, and "was in terms created" by the Act of the Legislature. *State* v. *The N. C. Railway Co.*, 44 Md. 163 and 90 Md. 466.

We need therefore make no further reference to the "Articles of Union." The claim of the State, however, was provided for in another Act, approved on the same day on which the Act of consolidation was passed. At that time the Baltimore and Susquehanna was hopelessly insolvent; its debt to the State, including the interest thereon, exceeded the value of all its property, and the stock held by the State was practically worthless. The other companies, with which it was proposed to consolidate, were solvent, and their property "comparatively unencumbered." It was therefore an "essential preliminary" to the proposed union, that some adjustment should be made of the State's claim, and it was with that end in view that the Baltimore and Susquehanna made to the State three alternative propositions. Governor Lowe in his message to the General Assembly of 1854, stated them as follows : " The State was asked to do one of three things : First to retire from its position as a preferred creditor of the Baltimore and Susquehanna R. R. Company, and leave it at perfect liberty to use its credit, to such an extent as may be necessary, with power to confer priority upon its new indebtedness, the State reserving to itself the next place in the obligations of the company, after full provision shall be made for the new creditors. Secondly, that the State should for the whole amount of the company's indebtedness to it, place itself in the relationship of a simple stockholder, which would as in the former case, leave the company in the free use of its credit, and with power to confer priority upon the new indebtedness it may be necessary to incur. Thirdly, that the State should consent to a sale of its interest in the road. The amount to be realized to the State by the proposal was I believe estimated at $1,500,000."

What the State agreed to do under these circumstances is clearly shown in the Act of 1854, ch. 260, which, as we have said, became a law on the same day that the Act of consolidation was approved, that is on the tenth day of March, 1854. When it is borne in mind, that the adjustment of the State's claim was necessary for the effectuation of a consolidation, and the character of the overtures made by the company as stated in the message of the Governor are considered, it is clear that the purpose of the State in the passage of this Act was not only to protect its own claim, but also to facilitate the union of the companies and to aid in the extension of the railroad to Sunbury in Pennsylvania. In the fourth section, the latter purpose is clearly expressed; power is there conferred upon the Mayor and City Council of Baltimore City " to give their assent to any proceedings" that may be considered advisable for making, "the stock and debt owned by the city, or any part thereof, available for the completion of the road of said Consolidated Company to Sunbury or to tide water." But the State was not willing to retire from its position as a preferred creditor upon all the portion of the road that was located within the limits of the State, nor to become a " simple stockholder ;" but it did desire to do what in its judgment would not hinder, but would aid, the completion of the road of the Consolidated Company to Sunbury in Pennsylvania or to tide water. To effectuate these purposes it released its entire claim to the new company (the appellant), surrendered all its stock in the old company; and in consideration thereof, agreed to accept " a mortgage of the entire line from Baltimore to Sunbury, to secure to the State of Maryland the payment of the annuity hereinafter mentioned," of ninety thousand dollars a year. That this is the effect of the Act of 1854, chapter 260, a brief examination of its provisions will make very plain. It is entitled, " An Act to provide for the *sale* of the interest of the State of Maryland in the Baltimore and Susquehanna Railroad Company, and for the completion of the Northern Central Railway Company from tide water in the city of Baltimore to Sunbury in the State of Pennsylvania, and for vesting cer-

tain powers to that end, in the Mayor and City Council of Baltimore." The three first sections deal entirely with the claims of the State, the fourth to which reference has already been made, to the interests of the city of Baltimore. The first section provides that whenever the corporation authorized to be created by the consolidation of the four roads mentioned, to be called the Northern Central Railway Company, shall have been duly established and shall execute and acknowledge and cause to be recorded in the city of Baltimore and in all the counties of Maryland and Pennsylvania, in which the same may be, a mortgage upon the entire line of the railroad from Baltimore to Sunbury to secure the payment of the annuity, &c., the Treasurer of the State is authorized and directed to convey and release " all of the estate and interest " of the State " in the present Baltimore and Susquehanna Company, and in all of its property, whether as stockholder, creditor, or mortgagee or otherwise," provided that, &c., " until the delivery of the same to the Treasurer, all the present rights of the State of Maryland shall be maintained in full force." The second section enacts that the annuity shall be of $90,000 a year, subject to be extinguished at any time within ten years hereafter," the company to have the privilege of paying the same in instalments of $100,000 each and "of obtaining a ratable reduction of the *annuity*, computing the same at six per cent on each payment made." Can it be questioned that this amounts to a sale? To aid the new company and at the same time to protect its own interest, the State releases all of its interest in the old company in consideration of the agreement of the appellant to pay it ninety thousand dollars a year. There is nothing in the contract as evidenced by the provisions of the Act that obliges the appellant to pay any other sum than that which may become due as part of the annuity. The right to extinguish within ten years, is for the benefit of the appellant and there is nothing that can enable the State to demand the payment of the $1,500,000 in extinguishment of the annuity within the ten years or thereafter. The right of extinguishment is limited to the period of ten years, and if not exer-

cised within that time, there is nothing in the contract that confers the right of extinguishment thereafter. By section three, it is provided, that "the mortgage hereinabove required to be given to secure *said annuity*," shall contain the usual conditions in such deeds, with a clause to authorize a sale of the mortgaged property at any time after three months subsequent "to a *default to pay* the whole *amount of the annuity*, which may fall due in any one year, &c." Here it is expressly stated, as indeed is apparent all through the Act, that only an annuity was intended to be created, and that the mortgage was to be given to secure the annuity only. No principal sum of which the amount of the annuity, was the annual interest, is in any part of the Act contemplated. Nor does the clause providing for a sale of the mortgaged property, include any default, except that which might arise upon the failure of the company to pay the amounts that may fall due in any year, on account of the non-payment of the annuity.

The mortgage executed and delivered by the appellant, is in strict accordance with the provisions of the Act, and its terms fully sustain the position, that the intent of the parties, was to secure only an annuity, and not a principal sum. There is no covenant contained in it, which obliges the appellant to pay to the State $1,500,00, or any other principal sum. It is, in this respect, in striking and significant contrast with the mortgages of 1838 and 1839, executed and delivered to the State by the Baltimore and Susquehanna R. R. Company. In those, the company covenanted to pay the loans, and if these and the interest thereon were paid, the deeds were to become null and void. But in the mortgage of the appellant, the provisions contemplate the payment of the annuity only, and there is no other sum that the appellant covenants or is obliged to pay. We do not think it is necessary to dwell longer upon the provisions of the mortgage. Much of what has been said in reference to the Act authorizing the transaction is applicable to the mortgage. We do not find anything in the provisions of the Act, or of the mortgage, that would justify us in holding that the parties intended to create something other than a

mere annuity.   It is clear, we think, there is not now and never has been, any sum due from the appellant to the State, other than that accruing from the non-payment of the amounts payable on account of the annuity.

If this be correct, it follows that the appellant is not entitled to the relief sought for by the bill ; and inasmuch as the decree below, must be affirmed for the reasons already given, it is not material to decide the other questions, that were raised and discussed at the argument.

*Decree affirmed with costs to the appellees.*

(Decided March 8th, 1901).